UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
OTTO IVAN ESCOBEDO,                :
                                   :
                Petitioner,        :   No. 05 Civ. 8157 (CM)(MDF)
                                   :
          -against-                :   REPORT AND RECOMMENDATION
                                   :
JOHN BURGE, Superintendent of      :
Auburn Correctional Facility,      :
                                   :
                Respondent.        :
------------------------------x

TO:  THE HONORABLE COLLEEN McMAHON, U.S.D.J.

     Petitioner, pro se seeks a writ of habeas corpus to

challenge his conviction by plea of guilty to one count of murder

in the second degree (N.Y. Penal Law §125.25 subd. 1).  Pursuant

to an agreement, the Westchester County Court, Judge Molea,

sentenced Petitioner to an indeterminate term of imprisonment of

eighteen (18) years to life.  The Appellate Division, Second

Department, affirmed the conviction in a brief order, People v.

Escobedo, 7 A.D.3d 539, 775 N.Y.S.2d 594 (2d Dep't 2004), lv.

denied, 3 N.Y.3d 658, 782 N.Y.S.2d 700 (2004), the substance of

which reads as follows:

          The defendant's waiver of his right to appeal does not
     encompass his contention that ineffective assistance of
     counsel affected the voluntariness of his plea.  However,
     the defendant's claim that his plea was involuntary is
     unpreserved for appellate review because he never moved to
     withdraw his plea or vacate the judgment of conviction.  In
     any event, contrary to the defendant's contentions, the
     record demonstrates that defense counsel's performance at
     the Wade hearing satisfied the meaningful representation
     standard, and did not affect the voluntariness of the
     defendant's plea.  (citations omitted).

     After Petitioner was sworn, the prosecutor conducted a voir

dire examination in which Petitioner acknowledged that he

understood his rights and waived them.  Petitioner, age 26, was pleading guilty freely and voluntarily and without any threats of force or coercion.  He was satisfied with the advice and representation furnished by his attorney.  He had sufficient occasion to discuss his plea and the waiver of his rights, including his right to appeal, with defense counsel.  Petitioner had not consumed any alcoholic beverage, medication or other drugs.  He stated that no one had made any promise or representation to him with respect to his guilty plea, and that he understood his plea was the equivalent of being found guilty at trial.  He understood that the state trial court's commitment of 18 years to life was less than the sentence of 25 years to life which he faced if convicted after trial.

After the advisement and acknowledgment and waiver of rights, the colloquy turned to a series of leading questions intended to establish a factual basis for the plea.  Overall, Petitioner admitted that on January 20, 2001 he shot and killed Aldaberto Bello at a wedding reception.  Specific facts came to light during a Wade-Huntley hearing.

On the day of the murder, Petitioner and the victim attended a wedding as guests at the Temple Emanuel, located at 306 Rumsey Road, Yonkers, New York.  According to several witnesses, a group of gang members, known as the "Vatos Locos," also attended the reception.  After members of Vatos Locos made several requests to the disc jockey, a fight erupted in which several men beat the

2

victim savagely in the area surrounding the disc jockey station.

Jessica Aguilar, also a guest at the wedding, witnessed the beating while crouched under a table approximately twenty one feet away from where the victim was shot.  Aguilar observed Petitioner as he pulled a revolver from the waist-band of his pants, pointed the gun at Aldaberto Bello, and shot him twice. According to the medical examiner, a single bullet to Aldaberto Bello's abdomen was the cause of death.

Following the homicide, the Police arrived and found Petitioner with four other individuals, Jessica Aguilar, Benito Rocha, Jose Rocha, and David Cabildo, in an automobile.  The Yonkers Police ordered the individuals to exit the car one at a time, whereupon they were individually identified by another guest at the reception, Mario Bello Batista, Aldaberto Bello's brother.  Batista identified all of the men as participants in the attack on Aldaberto Bello and Aguilar as having attended the reception with these men.

The following day, during separate and individual interviews with Police Detective Deering, both Jose Rocha and Aguilar stated that Petitioner had shot Bello.  During the interviews Rocha and Aguilar were each shown a single photograph of Petitioner for identification purposes and positively identified Petitioner.  At a Wade hearing, Rocha testified that he knew Petitioner from the neighborhood and that the two had spent time together in social settings several months prior to the shooting.

3

Additionally, four other witnesses viewed photo arrays and positively identified Petitioner as a guest at the wedding. Mario Bello Batista, Maribel Bello, Jorge Vaquero and Miguel Sanchez were individually and separately shown the same array of six (6) photographs.  One of the photographs in this array depicted Petitioner wearing an allegedly distinctive hospital gown.  At the Wade hearing the state trial court concluded that these photo arrays were not impermissibly suggestive over defense counsel's contention that the photographs should have been rearranged each time the array was displayed to a witness.  Tr. 256.

Petitioner contends, as he did on direct appeal in the state courts, that alleged instances of ineffective assistance of counsel at the Wade-Huntley pretrial hearing induced his guilty plea and thereby rendered it involuntary.  See Hill v. Lockhart, 474 U.S. 52 (1985).  Specifically, Petitioner faults defense counsel for failing to alert the state trial court that his photograph in the array depicts him in a distinctively patterned hospital gown, apparently as opposed to the other individuals depicted in the other photographs.  The array has not been presented in this proceeding.  Petitioner also faults counsel for failing to introduce a videotape of the event into evidence. Although witnesses described how the videotape depicted the event, the tape itself was not offered at the hearing and has not been offered in this proceeding.

4

In response to Petitioner's claims, the State has invoked the procedural default raised by the Appellate Division.  See Gray v. Netherland, 518 U.S. 152, 166, 116 S.Ct. 2074, 2082 (1996).  This defense requires Petitioner to establish cause for the default and prejudice arising therefrom, as those terms have been defined by the United States Supreme Court, or that he is actually innocent of the offense for which he has been convicted.  See Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591 (2000); Schlup v. Delo, 513 U.S. 298, 314-315, 115 S.Ct. 851, 860-861 (1995) (cases cited and discussion therein).  Petitioner has not addressed these standards.  See, e.g., Chung v. Filion, No. 03-CV-1913 (DLI) (E.D.N.Y. March 7, 2007 (2007 Westlaw 749725 at *4); Rivera v. Moscicki, No. 03 Civ. 5810 (SAS) (S.D.N.Y. Sept. 22, 2005) (2005 Westlaw 2347840 at *3).  Even if the claims were not procedurally barred, the record does not entitle Petitioner to relief.

> Where a defendant is represented by counsel during the plea process and enters a guilty plea upon his advice, a challenge to the validity of the plea based on ineffective assistance of counsel is governed by the two-part Strickland v. Washington test.  See Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).  First, defendant must show that counsel's representation fell below an objective standard of reasonableness, as determined by the range of competence required of attorneys in criminal cases.  Id. at 56, 106 S.Ct. at 369.  Second, "defendant must show that there is a reasonable probability that, but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial."  Id.at 59, 106 S.Ct. at 370-71.

Tate v. Wood, 963 F.3d 20, 26 (2d Cir. 1992); accord Davis v.

Greiner, 428 F.3d 81, 87 (2d Cir. 2005).

During the Wade hearing, Petitioner's counsel argued that a computer generated photo array procedure was impermissibly suggestive because the photographs of Petitioner and the fillers had been arranged in the same order each time the array was displayed. Counsel asserted that these photographs should have been reorganized so as to diminish each witnesss' ability to advise another of the location of Petitioner's photograph. The state trial court found nothing impermissibly suggestive about the display of this array to these witnesses. Tr. 255-256. Petitioner contends that had his counsel advanced the allegedly distinctive nature of the hospital gown's pattern as impermissibly suggestive, the state trial court would have ruled differently.

Petitioner, however, has not explained how this gown or its pattern was impermissibly suggestive, and I doubt the state trial court would have changed its ruling even if the point had been made. Detective DiDio, who displayed the array, described the photographs as "encased in a yellow folder where just the head shots are shown." Tr. 142. Neither the gown nor its pattern would have been prominent, and nothing about the context nor the circumstances indicates that Petitioner had recently been taken to a hospital. Additionally, the identification procedure was employed for the purpose of determining whether Petitioner had been present at the reception and not to identify the shooter.

Detective Deering testified that after giving Petitioner <u>Miranda</u> warnings, during the interview, Petitioner explained where he had been when the shots were fired and earlier during the reception, ostensibly to explain why he had blood on his shirt.  Tr. 52-53. As a result, Petitioner was not going to deny that he had been present when the homicide occurred.  His own statements to the police affirmatively demonstrate a lack of relationship between the allegedly defective photo array and his decision to plead guilty.

Because Aguilar had been shown a single photograph of Petitioner in a pretrial identification procedure which lacked exigent circumstances, the State needed to demonstrate at the hearing that her in court identification testimony was nevertheless reliable as stemming from an adequate and independent source.  <u>Manson v. Brathwaite</u>, 432 U.S. 98, 97 S.Ct. 2243 (1977).  Petitioner's counsel contended that Aguilar had motive to lie and fabricate.  When she made the identification, she was on probation, and her sworn statements to the police and grand jury testimony contradicted her testimony at the hearing. Petitioner now asserts that the video would have undermined Aguilar's testimony that she saw Petitioner shoot the victim and thereby persuaded the state trial court to conclude that she had not had a clear line of sight during the shooting.

Whether Aguilar was able to see or did or did not see what she claimed to have witnessed was not at issue at the pretrial

suppression hearing.  The issue was whether her identification of Petitioner as the shooter had its origins in having seen the single photograph of him shown to her by the police or in, as the state trial court found, the circumstances:  she had spent three (3) hours, in Petitioner's presence during which she intermittently observed Petitioner from approximately twenty one (21) feet and thereafter five (5) minutes in an automobile with Petitioner following the shooting.  Tr. 242-243.

If the video does indeed show that Aguilar could not have seen Petitioner when he shot the victim, it was exculpatory, and it was not somehow less exculpatory because Jessica Aguilar was not telling the truth.  To be sure, the State asserts the contrary: that the video shows Petitioner shooting the victim. Mem. of Law at 16 (doc. #5).  In relating what occurred during the questioning of Petitioner, Detective Deering testified that the video displayed a recoil motion in Petitioner's right arm, which motion corresponded to the sounds of the shots being fired. Tr. 55-56.  If the video is inculpatory, Petitioner's decision to plead guilty and the benefit he derived therefrom, as opposed to going to trial, is obvious and apparent from this record.  The state trial court's exclusion of Aguilar's in court identification testimony would not have made the video any less inculpatory.  If, however, it is exculpatory, Petitioner has yet to explain why he admitted, under oath, a homicide that he did not commit.

8

In sum, the record amply demonstrates that Petitioner understood the offense to which he was pleading guilty and the consequences thereof, and most importantly, that he was guilty of that offense.  Petitioner participated in plea negotiations and has presented nothing to demonstrate that his plea was involuntary.  Petitioner was aware that a guilty plea would favorably reduce his sentence from the maximum by seven (7) years.  Thus, Petitioner knowingly, voluntarily, and intelligently entered a plea of guilty.

Based on the foregoing, I respectfully recommend that your Honor dismiss this petition.

<u>NOTICE</u>

Pursuant to 28 U.S.C. §636(b)(1), as amended, and Rule 72(b), Fed.R.Civ.P. the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Rule 6(e), Fed.R.Civ.P., or a total of thirteen (13) working days, (see Rule 6(a), Fed.R.Civ.P.), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Colleen McMahon at the United States Courthouse, 500 Pearl Street, Room 640, New York, New York 10007 and to the chambers of the undersigned at the United States Courthouse, 300 Quarropas Street, Room 434, White Plains, New York 10601.

Failure to file timely objections to this Report and

or judgment that will be entered by Judge McMahon.  <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Frank v. Johnson</u>, 968 F.2d 298 (2d Cir.), cert. denied, 506 U.S. 1038 (1992); <u>Small v. Secretary of H.H.S.</u>, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam); <u>Wesolek v. Canadair</u>, Ltd., 838 F.2d 55, 58 (2d Cir. 1988).  Requests for extensions of time to file objections must be made to Judge McMahon and should <u>not</u> be made to the undersigned.

Dated: May __16__, 2007
White Plains, New York

                              Respectfully submitted,


                              _____
                                    Mark D. Fox
                              UNITED STATES MAGISTRATE JUDGE

       Copies of the foregoing Report and Recommendation have been sent to the following:

The Honorable Colleen McMahon

Mr. Otto Ivan Escobedo (02-A-1376)
Auburn Correctional Facility
135 State Street
Auburn, New York 13021

Joseph M. Latino, Esq.
Assistant District Attorney
Westchester County Courthouse
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, New York 10601

                              10